---

(164 App. Div. 825)

### In re SOUTHWORTH et al.

(Supreme Court, Appellate Division, Second Department.　December 11, 1914.)

**1. Powers (§ 36*)—Execution—Supervision by Courts.**

Where the power of dividing the residuary estate among named charities vested in the executors in their discretion by the will has been honestly exercised, the court will very rarely interfere therewith, even though it does not agree with the wisdom of the apportionment.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155; Dec. Dig. § 36.*]

**2. Powers (§ 36*)—Execution—Bad Faith.**

The mere fact that the appointors under a testamentary power have gained an incidental benefit from their appointment does not show bad faith, in the absence of a showing that they would not have made the same appointment if it were not for the benefit.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155; Dec. Dig. § 36.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. POWERS (§ 36*)—EXECUTION—VALIDITY OF APPOINTMENT.

Where a testator, whose estate was valued at $159,000, left about $20,-000 to his widow, and the greater part of the balance to be divided among certain charities as the executors might deem best, giving them also the right to increase the allowance to the widow, and after the testator's death the widow became insane, so that she required a greater income for her support than before, it was not an abuse of the power of appointment for the executors to give her absolutely an additional $79,000, although her wants could have been sufficiently provided for by giving her merely a life estate.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155; Dec. Dig. § 36.*]

4. POWERS (§ 36*)—EXECUTION—BAD FAITH.

The fact that one of the executors was the committee of the incompetent widow, and that both were executors under her will, so that their compensation would be increased by the increase of her estate, does not show bad faith on their part, since the compensation of the committee and the executors is intended to be for value received, and not as a mere gratuity, and is subject to control by the courts.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155; Dec. Dig. § 36.*]

Appeal from Surrogate's Court, Kings County.

Application by Frederick A. Southworth and another, as executors of William Ludden, deceased, for final settlement. From a decree settling the executors' accounts; the Brooklyn Young Men's Christian Association and others appeal. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and PUTNAM, JJ.

Edward P. Lyon, of New York City, for appellant Brooklyn Young Men's Christian Ass'n.

William G. Cooke, of New York City (Howard O. Wood, of New York City, on the brief), for appellants Young Women's Christian Ass'n of Brooklyn and Brooklyn Bureau of Charities.

Alfred G. Reeves, of New York City, for respondent executors.

Thomas H. Troy, of Brooklyn, special guardian.

JENKS, P. J. This appeal is from a decree of the surrogate of Kings county that settles an account of executors. The executors, as appointors, were to divide the residuary estate, "not equally, but according to their discretion and judgment as to the respective needs" of certain charities and certain of the legatees. And again the testator wrote:

"It is my will that the amount to each be fixed by my executors as before said, and they may also abate one or more from the above list."

The objectors and appellants are two of the charities named by the testator, and the recipient of moneys, respectively, under the execution of the power. There is no question raised as to the legality of the exercise of the power, but challenge is made to the exercise of the discretion as unfair and unreasonable, and there is also a charge of bad faith made by one of the said objectors.

[1, 2] Very rarely, if ever, does the court interfere with the honest exercise of their discretion by appointors. The court will not upset

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nor disturb what they have done, because it concludes that they did not execute their power as wisely or as well as could be. The court may be convinced that within the general scheme of benefaction a different method of distribution or different proportions of distribution would have met as well the need or deserts of one, and accordingly could have met better the need or deserts of another, and yet the court cannot therefore undo what has been done. It can look into what has been done to ascertain whether, in the execution of the power, the appointors were guilty of bad faith, or intentionally did not exercise their best judgment, but acted from improper or ulterior motives. For in that case the appointors fell short of the confidence of the testator, and the court will right the betrayal. That the appointors have gained a benefit merely incidental is not enough to cause the court to act. The court should be convinced that, but for the benefit gained, the appointors would not have done as they did. The authorities for these propositions follow: Markey v. Langley, 92 U. S. 154, 23 L. Ed. 701, citing Olcott v. Bynum, 17 Wall. 63, 21 L. Ed. 570; Banning v. Gunn, 4 Dem. Sur. 337, 341; McLean v. McLean, 62 N. Y. 627; Roosevelt v. Roosevelt, 64 N. Y. 651, affirming, substantially on opinion below, s. c., 6 Hun, 43; Pomeroy's Equity (3d Ed.) §§ 960, 1002; Chaplain on Express Trusts and Powers, 469, 470; Sugden on Powers, vol 2, p. 129; 10 L. R. Eq. Cas. 9. See, too, Farwell on Powers, 330.

[3] Although the testator expressed the thought that he had made proper specific provision for his widow, yet he contemplated that further provision might be necessary, for he not only nominated her in his will as one of the possible appointees, but he expressly wrote, in the letter referred to in his will, that if necessary she should be "well provided for from my residual estate." The inventory of the estate was in round numbers $159,000. The realty, consisting of the homestead, was valued at $10,000. The appointors increased some of the annuities of the legatees, applied $15,000 to some of the various charities in different amounts, and transferred the balance of the residuary estate, in round numbers $79,000, to the widow absolutely. Thus, in addition to the homestead, the widow has in all about $100,000 (exclusive of her own estate of about $10,000), instead of the homestead and $20,000, as specifically provided in the earlier part of the will. But since the death of the testator the widow, now 82 years old, has been adjudged an incompetent. The proof shows, and the surrogate has found, that, exclusive of clothing, amusements, traveling expenses, and a probable expense of an additional nurse at $30 a week, the keep of this aged lady requires $5,000 a year. There is no proof to indicate that the testator foresaw or apprehended that his widow would become insane, and hence his forecast of her probable need did not so contemplate her.

There is no fault found with the said sum required for her maintenance, but the criticism is that it was unnecessary to make over to her absolutely the balance of the residuary estate. I agree with the learned surrogate that there is force in this criticism. But as he found that this payment was a proper and reasonable exercise of discretion, made in good faith and in accord with the direction and wishes of the testator, he did not disturb the appointment. I think that there is not

proof sufficient in the scheme itself to warrant a conclusion of bad faith against these appointors. There is no proof of the needs of the charities, which are praiseworthy and well established, in comparison with those of the widow.

[4] But it is contended that there were benefits secured to the appointors which afford sufficient evidence to upset this disposition of the residuary estate. One of these appointors is the committee of the estate of the incompetent. It is argued that, as this action of the appointors increases that estate, the committee will receive more compensation. But we must assume that the court appointed the proper committee in consideration of all the circumstances. He must have given security, he is controlled by the court, and his compensation is determined by it. Sections 2337, 2338, 2339, Code of Civil Procedure. It appears that the widow, while competent, made a will, that these executors are executors under that will, and that all this was known to them before they acted in appointment. It is argued that, the larger the estate of the widow, the larger will be the commissions, and that her estate, thus increased, will afford full commissions to them both. But it must be remembered that the allowances, both to committee and to executors, rest upon the theory of compensation; that they are not gratuities.

We must not overlook the fact that this committee and these executors were well known to the testator and apparently had his entire confidence, as is shown by his will and his writings. One was his attorney at law, who had charge of his investments, and who is to be continued, and the other was an inmate of his home, and his secretary, who had charge of his affairs, and who is to be continued also. It was not at all strange that one should have been selected as the committee by the court, or that both should be chosen as executors by the testator and by the widow also.

I think that the circumstances are not sufficient to disturb the decree, which is affirmed, but without costs of this appeal. All concur.